## BLAUSTEIN *v.* AIELLO

[No. 248, September Term, 1962.]

*Decided May 6, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

*Robert H. Symonds,* with whom was *Albert A. Rapoport* on the brief, for appellant.

*Howard J. Thomas,* with whom were *Bradshaw & Thomas, J. Douglas Bradshaw* and *Francis E. Yeatman* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The issue herein involved is a narrow one and not difficult of solution. The chancellor overruled appellant's exception to an auditor's report, and he has appealed.

The sole question to be determined is whether appellant, who claims as an assignee of the balance due on a note secured by a second deed of trust, is entitled to a priority over the holder of a note secured by first deed of trust in the distribution of the proceeds of a foreclosure sale of the real property named in both trusts.

On September 30, 1958, Home Federal Savings & Loan Association (Home) entered into two construction loan agreements with Forest Knolls, Inc., a corporation engaged in building dwellings. By the terms of these agreements, Forest Knolls agreed to construct six residences upon vacant lots; in return, Home agreed to lend Forest Knolls $84,000 to be advanced in the future in accordance with schedules set forth in the agreements. These schedules provided that the final portions of the loans, amounting to $2,800 for each' house, were to be made "when [the dwellings were] FULLY COMPLETED, graded and landscaped; Release of Liens for all labor and materials submitted in proper form." The agreements further provided that if the real estate were encumbered without the consent of the lender, the lender would be under no obligation to make "further payments."

In accordance with these agreements, a note and deed of trust were executed by Forest Knolls. The trust was recorded in the land records of Montgomery County on October 9, 1958, at 1:08 p.m., and the deed of trust under which the appellant claims was recorded one minute thereafter. After all payments under the first trust had been made (to the extent, at least, of four of the houses) and foreclosure proceedings under said trust had been held, the balance due on the second trust note was assigned to appellant's attorney in fact. No claim for this

balance was filed with the auditor, but an exception to the auditor's report was filed before it was ratified. No question is here raised concerning the procedure. After hearing, the chancellor overruled the exception.

The appellant contends: (1) that the first deed of trust was one to secure future advances;[1] (2) that the lien of the trust under which he claims attached before the "final payments" of $2,800 each were made; (3) that the final payments were voluntary and not obligatory under the terms of the trust, as the houses had not been completed nor had releases of liens been obtained; and (4) that Home, the holder of the first trust, had actual knowledge of the second trust at the time of the voluntary payments. From these premises, he argues that his claim is superior to that of the holder of the first trust.

For the purposes of this case, we shall assume, without deciding, that appellant's contentions (1), (2), and (3) above are correct. In *Frank M. Ewing Co. v. Krafft Company*, 222 Md. 21, 158 A. 2d 654, we held, in accordance with the great weight of authority,[2] that a *voluntary* advance, as distinguished from one that was obligatory, by the holder of a first trust after actual notice of the attaching of intervening liens ranks behind those liens. We were careful to point out in that case that the appellant had actual notice, *i.e.*, such notice as actually imparts and brings home knowledge of the existence of a fact to a party to be affected thereby, or his authorized agent. There are several sound reasons for the above rule. Among these are that it would be inequitable to permit a prior lienor, with actual knowledge of subordinate liens, to diminish, voluntarily and at his whim or caprice, the security of subordinate lienors. And a contrary view would place an owner who is unable to demand advances from the holder of the first deed of trust in the unfor-

---

1. It may be noted that deeds of trust in the nature of mortgages and other deeds of trust to secure notes are explicitly excluded from the operation of Code (1957), Article 66, § 2. See also Rupp, Trustee v. Johnston Co., 226 Md. 181, 172 A. 2d 875, and compare Frank M. Ewing Co. v. Krafft Company, 222 Md. 21, 158 A. 2d 654.

2. Judge Hammond, for the Court, set forth the authorities in 222 Md. pp. 27, 28.

tunate position of also being unable to borrow on his property from another by reason of the possibility that, after the giving of a later deed of trust to the latter, the holder of the prior deed of trust might make advances to the owner, which would take priority over the claim of such latter.

We hold that constructive notice by the recording of the second deed of trust was not sufficient to bring the instant case within the scope of the *Ewing* case. (We did not quite reach this specific question in *Ewing.*) "Such," says 1 Jones, *Mortgages* (8th ed.), § 456, "it is conceived, is the rule supported by reason and the weight of authority." See also Watkins, *Maryland Mortgages for Future Advances,* 4 Md. L. Rev. 111, 199, note 23.

In the instant case, there is not a scintilla of evidence that Home, or any authorized agent of it, had actual knowledge of the second trust when it made the final payments. The appellant urges us to "take judicial notice of the fact that it would too far stretch coincidence to assume [due to the proximity of time in the recording of the first and second trusts] anything other than the two trusts were recorded by the same person or persons, and for the express purpose of giving the Home Federal deed of trust priority * * *." The record does not disclose who recorded either trust. It is true that they were recorded close enough together in point of time so as to suggest they were presented for record by the same person, but this does not compel an inference of actual notice by the appellee, or its authorized representatives. To draw such an inference from this fact alone would leave too much to conjecture and speculation. Since the appellant failed to establish one of the necessary factors to place him within the ambit of our holding in *Ewing,* he cannot prevail.

> *Order affirmed, appellant to pay*
> *the costs.*